

**KAUFMAN DOLOWICH VOLUCK & GONZO LLP**

ATTORNEYS AT LAW

COURT PLAZA SOUTH
21 MAIN STREET, SUITE 251
HACKENSACK, NEW JERSEY 07601
PHONE: 201.488.6655
FAX: 201.488.6652
WWW.KDVGLAW.COM

*Iram P. Valentin, Esq.*
*Partner*
*Direct Dial: 201-708-8203*
*Direct E-Mail: jcurko@kdvglaw.com*

March 13, 2013

<u>*Via Electronic Filing*</u>
Magistrate Judge Madeline Cox-Arleo, U.S.J.C.
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Room 4015
Newark, New Jersey 07101

      RE:    **Eric Evans v. Barry I. Siegel, Esq.**
              **Case Number: 2:12-cv-00977- SDW-MC**

Dear Magistrate Judge Arleo:

      This office represents Defendant, Barry Siegel, Esq. ("Siegel" or "Defendant"), in connection with the above-captioned matter. Kindly accept the following letter brief in lieu of a more formal submission in opposition to Plaintiff's petition for an order compelling discovery responses, allowing additional discovery by Plaintiff, extending all deadlines and providing Plaintiff with fees and costs, as well as in support of Siegel's request that this Honorable Court enter an appropriate protective order pursuant to *Fed. R. Civ. Pr.* 26 forbidding discovery into Siegel's personal financial information and into the confidential financial information of unrelated third parties.

## FACTUAL BACKGROUND

      Briefly, Plaintiff, Eric Evans ("Evans" or "Plaintiff"), on behalf of himself and a putative class, instituted this lawsuit against Siegel for alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1601 *et. seq.* Evans, who we understand is also an attorney, is the proposed lead plaintiff on behalf of a class that has not yet been certified by this Honorable Court.

      It is undisputed that Evans owed a debt to Greater Alliance Federal Credit Union ("Greater Alliance") arising out of a personal loan. Ultimately, Plaintiff defaulted on his loan payments and Greater Alliance turned the delinquent account over to Siegel for collection. Plaintiff asserts that he received a collection notice dated February 18, 2011 from Siegel demanding $4,669.94 on Greater Alliance's behalf, which included attorney's fees of $761.66.

Kaufman Dolowich Voluck & Gonzo LLP
March 13, 2013
Page 2

Plaintiff claims that, in actuality, Siegel did not perform any legal services on behalf of Greater Alliance justifying the claimed attorney's fees and that he pursued an unreasonable late fee in excess of that which was contractually agreed upon between Greater Alliance and Plaintiff. Plaintiff further alleges that Siegel demanded "unearned fees," demanded more late fees than agreed to in Plaintiff's contract with Greater Alliance, and purportedly misrepresented the nature of the contractual obligation, thus violating the FDCPA. Plaintiff seeks to certify all individuals receiving such debt collection notices from Siegel as the putative class. Siegel denies that Plaintiff has a factual or legal basis to sustain his claims.

## PROCEDURAL HISTORY

All parties appeared before Your Honor for an in-person scheduling conference on December 12, 2012. At this time, Your Honor set forth a comprehensive discovery schedule, which included deadlines by which the parties were to serve discovery demands. (See Curko Cert., Exhibit A)[1]. Notably, the Case Management Order set forth, *inter alia*, that parties were to serve written discovery demands by December 31, 2012.

The discovery demands which are the subject of the instant application were not propounded by Plaintiff's counsel until January 18, 2013, nearly three (3) weeks after the deadline to do so had passed. (See Certification of Plaintiff's Counsel, Exhibit C). A single additional interrogatory was subsequently propounded on February 4, 2013. (See Certification of Plaintiff's Counsel, Exhibit D). In the spirit of cooperation and professional courtesy, the undersigned did not posit any objection to the untimely service of Plaintiff's interrogatories. However, as of the date of the filing of Plaintiff's motion to compel, to wit, March 1, 2013, Siegel was still within the time frame permitted by *Fed. R. Civ. Pr.* 33(b)(2) to respond.

Importantly, more than half of Plaintiff's interrogatories seek disclosure of Siegel's private financial information, including but not limited to, the dollar value of Siegel's personal net worth, information regarding any loans, credit and/or financing Siegel has received, the value of any real estate owned by Siegel, and an itemization of all personal and real property owned by Siegel. (See Certification of Plaintiff's Counsel, Exhibit C)[2].

My associate, Jacqueline Curko, Esq., engaged in a brief telephone conference with Plaintiff's counsel on February 13, 2013, at which time Siegel's specific objections to Plaintiff's interrogatories were addressed. At no point during this conversation did Plaintiff's counsel take exception with Siegel's objections vis-à-vis discovery into his personal financial information. To the contrary, counsel indicated that he would review the case law relied upon by Siegel and reevaluate the propriety of the requests.

Ms. Curko further advised counsel that the documents sought in Plaintiff's notice to produce, although objectionable on several substantive grounds, required an exhaustive and

---

[1] Reference to "Curko Cert." is made to the Certification of Jacqueline Curko, Esq. submitted in conjunction herewith.
[2] These requests are ostensibly premised upon the fact that the FDCPA provides for damages to a class in an amount up to 1% of a defendant's net worth in the event that violations are found. 15 U.S.C. § 1692k(a)(2)(B).

extensive investigation of Siegel's electronic, DOS- based computer operating system, which does not permit customary menu driven searches. She explained that, as a result, responding to demands pertaining to the putative class would require considerable time and difficulty, which Siegel was in the process of undertaking. At no point in time was it suggested that responses would not be provided.

By way of correspondence dated February 25, 2013, Ms. Curko memorialized Siegel's objections, as discussed during the telephone conference with Plaintiff's counsel. More specifically, she expounded upon Siegel's position regarding certain intrusive and premature discovery demands which sought information relative to Siegel's personal assets and net worth. (See Certification of Plaintiff's Counsel, Exhibit I). Additionally, she advised Plaintiff's counsel that, while Plaintiff's own responses to Siegel's interrogatories and notice to produce had been received, these responses were deficient and/or otherwise unresponsive in several critical respects.

Nothing further was heard from Plaintiff's counsel until receipt of the present application seeking to compel discovery and award fees and costs.

## LEGAL ANALYSIS

### I.  Plaintiff's Motion to Compel Violates of *L. Civ. R.* 37.1 and 37.2

Rulings regarding the proper scope of discovery, and the extent to which discovery may be compelled, are matters consigned to a court's discretion and judgment. DiGregorio v. First Rediscount Corp., 506 F.2d 781, 788 (3d Cir.1974).

In cases where a discovery motion is required, *L. Civ. R.* 37.1(b) governs motion practice. Of particular significance here is the mandate of *L. Civ. R.* 37.1(b)(1), which provides that, before a party may file a motion to compel discovery, the parties must engage in a process designed to eliminate the need for the filing of motions. More specifically, *L. Civ. R.* 37.1(b)(1) imposes a substantial obligation on counsel to resolve discovery problems before bringing them to the attention of the court by mandating that all discovery motions be accompanied by an affidavit setting out the specific efforts made by the moving party to resolve the matter before filing the motion. The affidavit must certify compliance with the conference requirement of *L. Civ. R.* 37.1(a)(1) and that the parties were unable to reach an agreement. In the absence of strict compliance with these local rules, a court will not address any discovery motion. *L. Civ. R.* 37.1(c).

Here, Plaintiff's counsel failed to abide by the mandates of *L. Civ. R.* 37.1 and 37.2 because he did not engage in a good faith effort to eliminate the necessity for the motion and has not submitted the required affidavit setting forth his efforts to eliminate the discovery disputes. Where, as here, Siegel has asserted his valid legal right to object to discovery requests that are unduly burdensome and/or otherwise improper, it is respectfully submitted that Plaintiff's motion to compel is inappropriate and should be denied.

Kaufman Dolowich Voluck & Gonzo LLP
March 13, 2013
Page 4

## II. Numerous Discovery Demands Are Objectionable and/or Otherwise Improper

### A. Plaintiff's Notice to Produce Documents

Under *Fed. R. Civ. Pr. 34*, it is the primary and first duty of the party seeking the production of material alleged to be in the custody and control of the adverse party to satisfactorily demonstrate that there exists "good cause" for such request. Here, however, Plaintiff's document demands go far outside the scope of discovery permitted by our Court Rules.

Plaintiff's Requests 3A-H through 8 all request a set of documents regarding collection activities **"of any kind"** occurring from February 17, 2011 to the present date by Defendant on behalf of his client, Greater Alliance. It is respectfully submitted that these requests are improper for a number of reasons: first, the applicable statute of limitations under the FDCPA is one (1) year from the date of the initial collection notice, to wit, February 18, 2011. Thus, Plaintiff is not entitled to documents spanning more than a two (2) year period. Rather, the relevant time period is February 18, 2011 through February 18, 2012.

Secondly, Plaintiff's demand for documents relative to **"collection activities of any kind"** against **"any and all individuals"** is overly broad, vague, unduly burdensome, and calls for the production of confidential and/or otherwise privileged materials. To the extent that Siegel rendered services to Greater Alliance that did not involve the same loan agreement or collection letter at issue in this case, Plaintiff should not be entitled to obtain that information. As such, and to the extent that this Honorable Court is permitting informal motion practice, Siegel respectfully requests that an appropriate protective order be entered pursuant to *Fed. R. Civ. Pr.* 26(c)(7), denying access to the following:

1) Documents relative to collection activities undertaken on behalf of Greater Alliance outside the relevant time period, namely February 17, 2011 through February 17, 2012;
2) Documents relative to collection activities undertaken on behalf of Greater Alliance which do not involve either the same loan agreement entered into between Plaintiff and Greater Alliance and the identical initial collection letter received by Plaintiff; and,
3) All written communications between Siegel and Greater Alliance.

Contrary to Plaintiff's assertions, Siegel has never refused to provide responses to Plaintiff's notice to produce documents and has never intimated that responses would not be provided. Quite to the contrary, Ms. Curko expressly advised Plaintiff's counsel during the February 13, 2013 telephone conference that responses to those demands which were not improper would be forthcoming, subject only to the caveat that Siegel's computer operating system made reproducing same particularly difficult. With due regard for Siegel's objections as

Kaufman Dolowich Voluck & Gonzo LLP
March 13, 2013
Page 5

set forth hereinabove, no objections are made to the production of non-privileged discovery, which Siegel is diligently endeavoring to provide.

### B. <u>Plaintiff's Interrogatories</u>

Out of Plaintiff's fifteen (15) initial interrogatories, nine (9) seek the disclosure of Siegel's private financial information relative to his personal net worth. However, Plaintiff's counsel was advised via telephone, and then again by way of written correspondence dated February 25, 2013, that these requests are improper because Plaintiff is not entitled to such private and/or intrusive information without first establishing liability.

The tenor of the federal decisions in respect to the duty to disclose such information is unmistakable- as a general matter, courts that have considered the issue of net worth under the FDCPA have done so at a point in the litigation when liability was no longer at issue. *See* <u>Sanders v. Jackson</u>, 33 F.Supp.2d 693, 694 (N.D.Ill.1998) ("The parties have settled all issues involved in the case except for the issue of the putative class's statutory damages as measured by 1% of defendant's net worth."); *see also* <u>Saunders v. Berks Credit & Collections, Inc.</u>, 2002 WL 1497374, at *11 (E.D.Pa.2002) (discussing net worth in the context of approving a tentative settlement of the class action); <u>Fry v. Hayt, Hayt & Landau</u>, 198 F.R.D. 461, 470 (E.D.Pa.2000) (same).

The case of <u>Seawell v Universal Fidelity Corp.</u>. No. 05-479, 2007 WL 1030544 (E.D.Pa. 2007) (unpublished opinion) is dispositive of the issue presented here, namely, whether Plaintiff is entitled to pursue extensive discovery into the personal finances of the defendant for purposes of establishing his net worth. In <u>Seawell</u>, Judge Pollack deferred consideration of the net-worth issue until end of litigation and unequivocally held that "unless and until the issue of liability is resolved (either via summary judgment, trial, or settlement), I will not entertain disputes over how damages will be calculated." <u>Id</u>. at *2. (<u>See</u> Curko Cert. Exhibit B).

Furthermore, the opening phrase of 15 U.S.C. § 1692k(a) states that "any debt collector who fails to comply with any provision of this subchapter ... is liable to such person," thus signifying that, in order to reach the damages issue, the defendant debt collector must first be found *liable* under the statute. In the instant case, no such finding of liability has been made, thereby rendering any determination of statutory damages at this stage purely speculative and constitutes an unwarranted intrusion into Siegel's personal finances and assets. With due regard for the foregoing case law, it is respectfully submitted that Plaintiff's motion to compel such discovery be denied, and that an appropriate protective order be entered denying access to Siegel's private financial information, including but not limited to, personal property, real estate, bank account information, and tax returns.

Kaufman Dolowich Voluck & Gonzo LLP
March 13, 2013
Page 6

### III. Fees And Costs Are Inappropriate Under The Facts Of This Case

Lastly, Plaintiff has also requested that the Court impose sanctions. *Fed. R. Civ. Pr.* 37 provides that, if a court grants a motion to compel a discovery response or if the disclosure or discovery is provided after the motion is filed, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." *Fed.R.Civ.P.* 37(a)(5)(A). However, *Fed.R.Civ.P.* 37(a)(5)(A) further provides that a court must not order this payment if "the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action, the opposing party's nondisclosure, response, or objection was substantially justified, or other circumstances make an award of expenses unjust."

Turning to the facts of this case, it is respectfully submitted that this matter does not present the type of discovery abuses *Rule* 37 intended to prevent. Defense counsel informed Plaintiff's counsel of Siegel's legitimate objections to the discovery sought, provided reference to applicable legal authority and further advised that responses to those demands that were not objectionable were forthcoming. Filing a motion to compel with the knowledge that defense counsel is in the process of obtaining the requested information clearly does not constitute a good faith effort to resolve the dispute without court action. Therefore, it is respectfully submitted that Plaintiff's request for fees and costs be denied.

### CONCLUSION

Based on the foregoing, it is respectfully requested that Plaintiff's petition for an order compelling discovery responses, allowing additional discovery by Plaintiff, extending all deadlines and providing Plaintiff with fees and costs be denied in its entirety and that a protective order be entered in favor of Siegel as described hereinabove.

Respectfully submitted,

**Kaufman Dolowich Voluck & Gonzo LLP**

By: /s/ Iram P. Valentin, Esq.
    IRAM P. VALENTIN, ESQ.