# Law Office of Sander D. Friedman
Counsellors-At-Law
125 North Route 73
West Berlin, New Jersey 08091

Sander D. Friedman                                                           (856) 988-7777 telephone
Wesley G. Hanna                                                        (856) 988-7744 facsimile

March 19, 2013

*Via Electronic filing*
and regular United States Mail
The Honorable Madeline Arleo, U.S.M.J.
Martin Luther King Building and US Courthouse
50 Walnut Street - Room 4015
Newark, New Jersey 07101

       Re:    **ERIC EVANS v. BARRY I. SIEGEL, ESQUIRE**
                **Civil Case No: 2:12-cv-0977-SDW-MCA**

Dear Judge Arleo:

      Please accept this letter brief in lieu of a more formal submission in reply to Defendant's opposition to my request to compel discovery. As of today, Defendant has yet to provide Plaintiff with any answers to Requests for Production or Interrogatories. Defendant's opposition to Plaintiff's motion to compel raises various objections to the discovery propounded - none of which were objected to in the ordinary course and some of which are being brought to Plaintiff's attention for the first time via Defendant's reply. Yet there is no excuse for being completely unresponsive. Accordingly, an order compelling discovery must be entered.

## 1. Defendant's characterization of events is flat out incorrect and provides no justification for providing zero response to Plaintiff's discovery demands.

The first point of Defendant's legal analysis is premised on two false assertions. First, Defendant asserts:

```
As of the date of the filing of Plaintiff's motion
to compel, to wit, March 1, 2013, Siegel was still
within the time frame permitted by Fed. R. Civ.
Pr. 33(b)(2) to respond.
```

Defendant then asserts:

```
Siegel's specific objections to Plaintiff's
interrogators were addressed
```
[in the course of a good faith meet and confer with Jacqueline Curko, Esq. that took place on February 13, 2013].
```
                                             At no point during this
conversation did Plaintiff's counsel take exception
with Siegel's objections.
```

Defendant's purpose for making these assertions is to argue that discovery responses should not be compelled for some technical reason even though responses are long over due. However, both assertions are false as a matter of fact.

Plaintiff's counsel propounded initial discovery upon Defense counsel in person at the initial conference held on December 12, 2012. Defendant claimed they did not receive the interrogatories and Plaintiff had no ability to prove service because of the way it was served. Thus, Plaintiff accepted that he lacked a foundation to insist that the interrogatories be answered by January 12, 2012. Nevertheless, the interrogatories were unquestionably propounded on January 18, 2013. The Federal Rules state that Defendants have 30 days to respond. That time expired on February 18, 2013. Accordingly, the discovery was overdue when Plaintiff filed the petition to compel discovery on March 1, 2013.

In calculating the due dates, Defendants conflate two separate sets of interrogatories. As noted above, the first set was propounded no later than January 18, 2013. A second set - which consisted of a single question - was propounded on

2

February 4, 2013. Propounding the second set of interrogatories in no way effected Defendant's obligation to answer the first set in a timely manner - and Defendant should be equitably barred from making such an argument because they pre-emptive refused to answer the latter interrogatory by way of correspondence dated February 12, 2013. If Defendant was taking the position on that the latter interrogatory was invalid, it follows that they are in no position to now argue that the service of that interrogatory extended the due date of the interrogatories propounded on January 18, 2013. Either way, Defendant's argument puts form over substance: the interrogatory is now due and along with all the rest of the discovery Defendant has ignored.

      Defendant's characterization of the discussion between Jacqueline Curko and myself is also false. I never agreed to review case law in lieu of filing the brief this court permitted me to file. Ms. Curko indicated that there was controlling case law with regards to one particular point (net worth discovery) and, for the sake of due diligence, I asked her to provide me with a citation since I was unaware of any such case. Nevertheless, I made it plain to her that the Defendant's net worth information was clearly relevant at this stage because it was filed as a class, that the objection had no bearing on much of Plaintiff's discovery (including the requests for production), and that if she wanted to raise the objection she should do so formally in writing as part of the answers that were due. I concluded by making it clear that unless she intended to provide me with responses, I still intended to file my application.

      The fact that Defendant's self serving characterization of the meet-and-confer is false is evident from three documents. First, Plaintiff immediately sent Defendant follow up correspondence. It is attached as Exhibit G to Plaintiff's Certification of Counsel in support of his initial submission on this matter. The correspondence makes it clear that I expected a formal written response to discovery and that, based on our conversation, I intended to file an application to compel discovery. Ms. Curko then responded to my correspondence on February 25, 2013 and never took issue with my characterization of the conversation.

Finally, Defendant's initial opposition does not make the same self serving assertions about the meet-and-confer as the late filed brief. This court entered an order setting March 13, 2013 as the due date for their opposition in this matter. The opposition was filed, signed by Ms. Curko, but it was rejected for technical reasons. Rather than simply re-file the brief, Defendant took two extra days to revise their submission. That submission was signed by Iram P. Valentin, Esq. and differs substantially from Ms. Curko's submission with regards to the characterization of meet-and-confer conversation. Mr. Valentin's account of the meet-and-confer should not be given any consideration whatsoever because he was not a party to it. The documents signed by the actual participants all evidence an ongoing dispute over Defendant's refusal to provide any discovery responses whatsoever.

Defendant has provided me with nothing. Their informal objection only speaks to a limited number of interrogatories. No responses to the admittedly non-objectionable requests have been provided. Their correspondence promised that answers to Plaintiff's request for production would be produced within 7 days of February 25, 2013. As of today, Plaintiff has yet to receive any response at all.

2. **The court should refuse to consider several purported objections Defendants raise for the first time in their opposition and the Court should decline to enter a protective order in Defendant's favor.**

Defendant argues that the reason it has not produced documents is because Plaintiff's requests were too broad in scope and time. This argument also serves as a basis for an informal request for the entry of a protective order. Defendant's opposition represents the first time these objections have ever been raised. The Rules are clear: a party is only entitled to a protective order if their motion includes a certification that the movant has made a good faith attempt to confer and resolve the dispute without court action. Fed. R. Civ. P. 26(c)(1). This never happened. Correspondence exchanged between the parties demonstrates that these issues were never raised in the good faith meet and confer. Accordingly, Defendant is not entitled to a protective order and the objection should not be considered.

4

In fact, this case demonstrates precisely why the Rules require an attempt to resolve the issue. One of Defendant's quibbles is that Plaintiff's request for production seeks discovery dating back to February 17, 2011 even though the look back period in this case is governed by a one year statute of limitations that Defendant argues cuts off claims prior to February 18, 2011. As a matter of law this assertion is incorrect: the class look back period extends one year back from the filing of Plaintiff's complaint, which occurred on February 17, 2012. However, even if we were to assume for the sake argument that Defendant's position had merit and that the only reason Plaintiff is entitled to those documents is for the purpose of identifying a class, a quibble over one single day is the type of thing that counsel can reasonably be expected to work out without court intervention.

It was never worked out because Defendant never preserved or otherwise advised Plaintiff of these types of objections. Accordingly, the objections should be deemed waived and/or should not form the basis of a protective order.

3. **Defendant's positions lack substantive merit.**

Defendant's opposition asserts a technical excuse, the net worth objection presented in the course of the good faith meet and confer, and new statute of limitations objections being raised for the first time. None possess substantive merit.

> A. **Plaintiff's request for debt collection materials does not conflict with the relevant statute of limitations because it only sought materials dating one year prior to the filing of the action through the present date.**

Evidence of Defendant's collection activities against individuals other than the Plaintiff are relevant for two reasons. First, Defendant has asserted bona fide error as a defense to the action. Plaintiff anticipates that the documents produced will demonstrate that Defendant's practice is so consistently repeated that it cannot be

attributed to bona fide error. Additionally, the claim was brought as a putative class action. The Fair Debt Collection Practices Act is subject to a one year statute of limitations. Plaintiff filed a putative class action on February 17, 2012. Accordingly, the class look back period dates back to February 17, 2011 and continues through the present day to whatever extent Defendant continues his unlawful practice.

    Defendant quibbles that the production requests are overly broad based on their flawed calculation of the statute of limitations. Yet the difference is a single day. Any issue could and should have been resolved with a phone call. Either way, a quibble over one day is no justification to decline producing documents there is no dispute are completely relevant.

    Defendant also argues that the discovery is over-broad because it asks for documents related to all of Defendant's collection activities on behalf of Greater Alliance Federal Credit Union. In reality, this is relatively limited request. One of the core wrongs that Plaintiff alleges is that Defendant charged a per se percentage of the total amount purportedly owed even though that percentage did not necessarily reflect a reasonable fee for the efforts expended. If Defendant was engaging in this practice for clients other than Greater Alliance, there is no reason why the victims could not be made members of the class - and Plaintiff reserves all rights to explore that issue in the class motion and follow up discovery.

    However, even if it could be presumed that the only victims of the practice were consumers that purportedly owed money to Greater Alliance, Plaintiff is entitled to see all of the documents related to collection matters as to that company throughout the class look back period. Defendant's position that Plaintiff should be limited to individuals that were subject to the exact contract is wrong. It may be that Greater Alliance had several form contracts that varied in immaterial aspects but were substantively similar for the purposes of this action. Whether or not a given difference is material or not is a legal question that Plaintiff should have the opportunity to present. Either way, discovery is broad enough to include both relevant material and material likely to lead to relevant evidence. Materials related

to Defendant's collections on behalf of Greater Alliance are *at least* likely to lead to relevant material. It is hard to see how they are not directly relevant materials. Accordingly, the materials must be produced.

### B. The case law supports disclosure on net worth discovery prior to class certification.

Plaintiff laid out the logic behind disclosure of net worth information prior to class certification and discussed both cases cited by Defendant's in their initial brief in this matter. Defendants never address those arguments and simply rely upon the refuted characterization of tangential non-binding decisions. Specifically, Defendant relies upon Sanders v. Jackson, 33 F.Supp.2d 693, 694 (N.D. Ill. 1998) and Seawell v. Universal Fidelity Corp., Civil Action 05-479 (E.D. Pa. Decided April 2, 2007). Both of those cases are discussed at length on Pages 10-11 of Plaintiff's initial submission. In short, neither case deals with the timing of net worth discovery and Seawell even cited cases acknowledging that net worth could be relevant in determining whether to certify a class.

The case law directly on point supports disclosure of net worth discovery. For example, in Muha v. Encore Receivable Management, Inc., 236 F.R.D. 429 (E.D. Wis. 2006), the plaintiff filed a motion to compel discovery in a putative class action that had yet to be certified. One of the issues was interrogatories concerning the defendant debt collector's net worth. Id. The defendant argued that the plaintiff's motion was premature because there had been no finding of liability or class certification. Id. at 430. Citing the fact that there is no legal authority mandating that net worth discovery be delayed until after a finding of liability or class certification, the Court granted the plaintiff's motions and awarded the plaintiff reasonable attorneys fees incurred in connection with the motion. Id. at 431.

Trevino v. ACB American, Inc., 212 F.R.D. 612, 613-614 (N.D. Cal. 2006) also concerned a Defendant objecting to net worth discovery in the context of a pre-certification FDCPA class action. Notwithstanding Defendant's objections, the Court

ruled that the discovery must be allowed because the information was relevant and potentially useful in determining whether the case was appropriate for class certification. Id. at 617.

This case is distinguishable from Muha and Trevino in only one regard: the net worth discovery in this case must be more probing because the Defendant in this case is an individual and not a business organization that shields its stake holders from personal liability. Therefore, Defendant's personal net worth is at issue and the inquiry as to net worth is necessarily more involved than a simple evaluation of business assets, revenue, and expenses.

Otherwise, this case is identical to Muha and Trevino and the same result must be reached: net worth discovery must be compelled and fees should be allowed.

4. **Defendant never addresses the itemized break down of discoverable material that necessarily exists and that necessarily falls outside the scope of Defendant's asserted objection.**

Plaintiff's initial submission presents an itemized breakdown of discovery that necessarily falls outside of the objections and excuses raised by Defendants. Specifically, Plaintiff articulates how the requests should have, *at minimum,* produce the following:

A. The contracts between the members of the putative class and Greater Alliance.

B. The retainer agreement authorizing Defendant to engage in collection activities on Greater Alliance's behalf.

C. The faxed collection authorizations described by Defense counsel in the course of the good faith meet-and-confer.

D. Defendant's invoices, bills, or accounting to Greater Alliance for compensation flowing from collections against the putative class.

E. Proof of payment of court filing fees.

F. Collection notices sent to the putative class.

G. Validation requests sent to Defendant by members of the putative class.

H. Defendant's responses to validation requests.

I. Settlement agreements with members of the putative class.

J. Defendant's court filings against members of the putative class.

K. The identity of an individual certifying answers for interrogatories, such that same could be deposed.

L. All facts known by Defendant that have relevance to the claims and defenses.

M. A statement of the factual basis of each affirmative defense asserted.

N. The identity of all persons known to have relevant information.

None of this discovery has anything to do with net worth. None of this discovery resides inside a computerized data base. The final items are routine statements each party requires of the other to avoid a trial by surprise. Providing this discovery may not have exhausted Defendant's discovery obligations - but there is no justification for not providing these materials as a good faith start.

**5.    Defendant's argument against the imposition of fees lacks merit.**

To date, Defendant has provided no discovery responses at all. Defendant argues that imposing fees and costs are inappropriate because "Defense counsel informed Plaintiff's counsel of Siegel's legitimate objections to the discovery sought, provided reference to legal authority and further advised that the that responses to those demands that were not objectionable were forthcoming." In reality, Defense counsel informally advised Plaintiff's counsel of a single objection that had no feasible applicability to a substantial amount of the information Plaintiff seeks. As to Defendant's promise to forthcoming discovery: it never arrived.

If this were simply a case of a dispute over the applicability of net worth discovery and Defendant provided the rest of the discovery on the time table

promised, Defendant might be able to argue there was a legitimate legal dispute on one issue and substantial compliance as to everything else. That is not what happened. Defendant raised the dispute about net worth discovery, never provided any of the physical non-net worth related paper work, and failed to provide the computer-based discovery on the time table promised. Nothing has been produced to date.

### 6. Discovery should be extended along with all other deadlines.

Defendant's refusal to provide any discovery whatsoever has stalled the prosecution of Plaintiff's case. Plaintiff's initial paper discovery was never intended to be the only paper discovery propounded. Rather, it was intended to be initial discovery with follow up discovery to be propounded following review of the materials provided in response to the first round of requests. Plaintiff would also like to take at the deposition of Defendant, any relevant witnesses, and possibly Defendant's employees. However, Plaintiff would like to know the identity of said employee(s) and/or the individual certifying answers to discovery before noticing anyone for deposition. Plaintiff would also like the opportunity to review the material obtained from the initial discovery and determine whether to amend the complaint. Finally, Plaintiff needs to engage in follow up discovery regarding the electronically stored information and the system that Defendant uses because this is information that only recently came to light in the context of an informal amongst counsel.

In light of Defendant's inexcusable refusal to provide Plaintiff with the discovery due, all deadlines should be extended.

Respectfully Submitted,

WESLEY HANNA

WH/j
cc: Jacqueline Curko, Esquire
(Via electronic filing)

10